CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

NOV 14 2008

JOHN F CORCORAN, CLERK
BY: /s/ K Bolton
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | | |
|---|---|---|
| DONNA M. HARRELSON, | ) | Case No. 5:07CV00094 |
| *Plaintiff* | ) | REPORT AND |
| v. | ) | RECOMMENDATION |
| MICHAEL J. ASTRUE, | ) By: | Hon. James G. Welsh |
| Commissioner of Social Security, | ) | U. S. Magistrate Judge |
| *Defendant* | ) | |

The plaintiff, Donna M. Harrelson, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ("the agency") denying her claims for a period of disability insurance benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423 and 42 U.S.C. §§ 1381 *et seq.*, respectively. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

The Commissioner's Answer was filed on January 15, 2008, along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered the following day, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

On appeal, the plaintiff presents two basic contentions. First, she asserts that the administrative law judge ("ALJ") "impermissibly substituted" his judgment of the nature and severity of her condition for those of a treating and an examining mental health professional. Second, she contends that the ALJ also erred in finding that her statements concerning the intensity, persistence and limiting effects of her symptoms were "not entirely credible." In his brief, the Commissioner contends that these contested determinations were made in accordance with the applicable agency regulations and that the final agency decision is properly based on substantial evidence. Each party has moved for summary judgment; no written request was made for oral argument,[1] and the case is now before the undersigned for report and recommended disposition.

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's decision denying benefits.

I.  **Standard of Review**

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB or SSI. "Under the . . . Act, [a reviewing court] must

---

[1] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (*quoting Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3d at 589). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## II.    Administrative History

The record shows that the plaintiff protectively filed her applications for DIB and for SSI on or about May 25, 2004. (R.58-60,302-304.) In her associated supporting disability report, the plaintiff alleged that her disability began on November 12, 2003 due to functional limitations related to depression, panic attacks, anxiety, a disc injury, social anxiety disorder, acid reflux, bowel and bladder trouble, and an obsessive compulsive disorder.[2] (R,58,74-75,302.) Her claims were denied

---

[2] Although not listed in her disability report, the plaintiff also claims that her functional abilities are significantly limited to be an average of three or four migraine headaches each month. (R.338-339.)

3

both initially and on reconsideration. (R.24-25,30-41,305-309.) Pursuant to her timely request, an administrative hearing on her applications was held on April 7, 2006 before an ALJ. (R.16,42,45-57, 318-372.) The plaintiff was present, testified and was represented by counsel. (R.16,26-29,318,323-347.) The plaintiff's daughter testified in support of her mother's applications, and Dr. Earl Glosser testified as a vocational witness. (R.55-57,318,356-370.)

Following the agency's standard five-step decisional inquiry,[3] the plaintiff's claim was denied by written administrative decision dated August 24, 2006. (R.16-23.) *Inter alia* he concluded that her degenerative disc disease, depression, generalized anxiety, obsessive-compulsive disorder, panic disorder, and a not otherwise specified psychotic disorder were "severe" impairments[4] within the meaning of the Act. (R.18-19.). Noting in his decision that he had paid specific attention to the relevant sections of the medical listings, the ALJ next concluded that none of these conditions, either singularly or in combination, met or equaled the applicable disabling criteria. (R.19.) *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. Based on the medical and testimonial evidence the ALJ then

---

[3] Determination of eligibility for social security benefits involves a five-step inquiry. *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). It begins with the question of whether, during the relevant time period, the individual engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, step-two of the inquiry is a determination, based upon the medical evidence, of whether the individual has a severe impairment that has lasted or is expected to last for 12 months. 20 C.F.R. § 404.1520(c); *Barnhart v. Walton*, 535 U.S. 212 (2002). If the claimed impairment is sufficiently severe, the third-step considers the question of whether the individual has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so, the individual is disabled; if not, step-four is a consideration of whether the individual's impairment prevents him or her from returning to any past relevant work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the impairment prevents a return to past relevant work, the final inquiry requires consideration of whether the impairment precludes the individual from performing other work. 20 C.F.R. § 404.1520(f).

[4] Quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. § 404.1520(c).

4

concluded that the plaintiff retained the functional ability to perform simple routine light work[5] activity in a low stress environment, including her past relevant work as a housekeeper, laundress, and office janitor. (R,19-23.)

After issuance of the ALJ's adverse decision, the plaintiff made a timely request for Appeals Council review. (R.10-13,315-317.). Her request was denied (R.6-9), and the decision of the ALJ now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

III.  Facts

The record in this case shows that the plaintiff was born in 1956 and was forty-nine years of age [6] at the time of the administrative hearing. (R.58,302.) She completed the tenth grade in school and later received a general equivalency diploma ("GED"). (R.73,325.). During the fifteen year period prior to the administrative hearing, the plaintiff had held approximately forty jobs, primarily as a housekeeper and laundress; however, she also worked as a dishwasher, cook's helper, and office janitor. (R.63-72,81-87,119,126,349-353,363.) Although the medical record contains reports by the plaintiff that she was working in 2004 and also in 2005 (R.207,226,288; *see also* R.125-126), dates

---

[5] Light work activity involves lifting no more than twenty (20) pounds with frequent lifting or carrying objects weighing up to ten (10) pounds, and a job in this exertional category generally also requires a good deal of walking or standing or, when it involves sitting most of the time, some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b) and § 416.967(b).

[6] Under the agency's regulations, the plaintiff is classified as a "younger person" and age is generally not considered to affect seriously such an individual's ability to adjust to other work; however, in some circumstances a persons aged 45-49 will be considered more limited in his or her ability to adjust to other work than a person who have not attained age 45. 20 C.F.R. § 404.1563(c) and § 416.963(c).

significantly after she alleges that she became unable to work, the ALJ concluded that her earnings did not constitute presumptive substantial gainful activity within the meaning of the Act. (R.18.)

The plaintiff lives in a second floor, rent subsidized apartment. (R.324.) At the time of the hearing, her twenty-three year old son was living with her. (*Id.*) In 2002 the record shows that the plaintiff's daughter and her daughter's three children were living with her [7] (R.216-223), and in more recent years she has provided child care assistance [8] for at least one of her grandchildren for various periods of time (R.187,189, 271,282,323-324). In her activities reports and in her testimony, the plaintiff listed a significant range of activities. She reported that she takes care of her own affairs (R.109-110), reads (R.89), fixes meals (R.91,109), does her own light housework (R.109,344), takes care of her three cats (R.108), goes shopping (R.92,110), visits family weekly (R.111), gets along well with others (R.95), and can maintain attention and concentration for an hour at a time. (R.94.)

Her medical records show that she underwent an anterior and posterior colporrhaphy at the University of Virginia Medical Center ("UVAMC") in February 2002. (R.131-135,165-167.) Post-operatively she made an uneventful recovery; however, she "struggled" with anxiety and depression and complained of diffuse pain and tenderness. (R.155-158.) And in July 2002 she was referred to HealthSouth for mental health counseling and to the UVAMC Clinic for evaluation and treatment of her complaints of low back pain and left lower extremity radiculopathy. (R.155-158.)

---

[7] Given the issue on appeal concerning the plaintiff's credibility, it is noteworthy that the plaintiff apparently was less than candid and truthful on this issue in testimony she gave in a state court proceeding. (R.216.)

[8] In January 2006, the plaintiff complained to a social worker that her children "[took] advantage" of her by having her watch their children (R.274.), and at the hearing she told the ALJ that her granddaughter was "staying with [her] right now." (R.323; *see also* R.346.)

There is no indication in the record that the plaintiff followed-up on the HealthSouth referral; however, in September 2002 she did seek mental health care through Valley Community Services Board ("VCSB"). She did not persist in this undertaking and discontinued treatment after several months. (R.204-226.) Similarly, in October 2003 she went to Valley Hope Counseling, but terminated treatment after two sessions. (R.166-171.) In June 2004, the plaintiff renewed contact with VCSB and for a third time began counseling and management her mental health issues by a staff psychiatrist. Her attendance at counseling was extremely irregular, and she stopped attending in September. (R.185-203,295-298.) After six months of non-attendance, the plaintiff was again discharged from the program in May 2005. (R.289-295.) In August 2005, she returned to VCSB for a fourth time for mental health treatment, and for yet additional time she repeated the same pattern of irregular attendance. (R.267-288.)

Following a consultive psychological examination in May 2005, Dr. Joseph Cianciolo concluded that the plaintiff in fact had a generalized anxiety disorder and a cluster C (social inhibition, inadequacy, extreme sensitivity to negative evaluation and avoidance of social interaction) personality disorder. (R.227.) *Inter alia* he observed her to be tearful and her mood to be congruent; he noted that she arrived on time, that she was appropriately dressed, maintained good eye contact, exhibited logical and coherent thinking, and was able to manage her own affairs. (R.227-228.)

In Dr. Cianciolo's opinion, the plaintiff's ability to maintain attendance and to perform work activities on a consistent basis represented her principal functional difficulties; however, as he noted she was receiving "no psychiatric treatment in any form" and lacked any history of "long-term

7

compliance with treatment." (R.228.) In the opinion of the ALJ, Dr. Cianciolo's assessment was entitled to "appropriate, but not controlling weight" for two principle reasons. It was made without knowing how the plaintiff might respond to treatment, and it was made without the benefit of knowing the scope of the plaintiff's daily activities. (R.228.)

In August 2005 the plaintiff returned to therapy at VCSB, and she later saw Dr. Michael Tyler, a staff psychiatrist at VCSB, for the first time in October 2005. (R.280,288.) Although treating professionals in the past had consistently assessed the plaintiff to exhibit moderate difficulties with social and occupational functioning [9] and noted that she was working, Dr. Tyler deemed the plaintiff mental health limitations to be a serious [10] functional impairment. (R.284.) In March 2006, he reiterated this assessment of the plaintiff's functioning; however, he noted that he had make no specific assessment of her work-related limitations and his global assessment was based on what the plaintiff told him. (R.263.) Although not mentioned or referenced by Dr. Tyler, the plaintiff's therapy records at VCSB for this period suggest that she responded appropriately and positively to medication. When treatment compliant, she was feeling better (R.279), was functionally able to start group therapy (R.279), was sleeping better (R.278), exhibited a stable mood and clear thinking (R.260,267,274,276), felt only slightly depressed on a daily basis (R.275), and exhibited a full and appropriate affect. (R.272.)

---

[9] In contrast, earlier Global assessment of function ("GAF") scores (dated 09/19/2002 (R.225), 10/07/2002 (R.219), 05/05/2004 (R.205) and 05/10/2005 (R.227)) by other mental health clinicians document more moderate symptoms or difficulty in social, occupational, or school functioning. *See Diagnostic and Statistical Manual of Mental Disorders*, 4th ed. (1994), 32.

[10] Dr. Tyler assessed the plaintiff's GAF to be 50. (R.284.)

Following the plaintiff's recovery from her February 2002 female surgery, her medical records show that she sustained a cervical strain as a result of a fall on a slippery sidewalk at work in October of the same year . (R.136-141, 143-147.) X-rays disclosed no significant abnormality, and she was diagnosed to have a cervical strain. (R.141,143-144.) Thirteen months later she fell and injured her back on the edge of some stairs as she was leaving work. (R.139.) Complaining of low back pain and an attendant left leg radiculopathy, she was initially treated at EmergiCare of Waynesboro and then at Augusta Medical Center. (R.136-139, 174-175.) On referral she was seen at UVAMC for an MRI in December 2003. (R.136, 163-164.) It disclosed that the plaintiff had broad-based L3/4, L4/5 and L5/S1 disc protrusions along with significant attendant nerve root impingements. (R.163-164.) Through the Pain Clinic, she subsequently received a series of three nerve blocks over the next two months with a significant decrease in her pain. (R.149-154,160-162.) After the third nerve block on February 27, 2004, the plaintiff's medical records do not indicate that she ever returned to the Pain Clinic or sought any subsequent treatment until she saw Dr. Charles Weisman on two occasions shortly before her administrative hearing. [11] (R.310,312.)

As part of the state agency's consideration of her claims, in December 2004 and again in May 2005, the evidence of record was twice reviewed by a state agency medical consultants and by state agency psychologists. (R.229-251.) Both medical consultants concluded that the plaintiff was

---

[11] On February 22, 2006, after seeing the plaintiff for the first time (R.311), Dr. Weisman opined in a Medical Report for General Relief that the plaintiff was permanently disabled due to "lower extremity venous insufficiency, lumbar stenosis, (*undecipherable*), chronic pain [and] depression" (R.311,301); however, his office notes suggest no objective laboratory or clinical basis for this opinion, and she was advised to return only on an as needed basis. (R.311,314.)

9

physically able to do light exertional activity, and both mental health consultants concluded that she was capable of performing simple routine work in a low stress environment. (*Id.*)

IV.  **Analysis**

A.

As the ALJ noted in his decision, and as the plaintiff concedes in her memorandum, neither Dr. Tyler nor Dr. Cianciolo made any specific assessment of her work-related limitations and their related statements were literally based on what she told them. By their very nature, she argues, the opinions of all mental health professionals are generally based in part on what the patient says, but they are also based, she argues, on the professional's observations and training.

As stated above, the court's function in the case is limited to determining whether the record contains substantial evidence to support the ALJ's findings. If the final decision of the Commissioner is supported by substantial evidence, this court simply lacks the authority to substitute its judgment for that of the Commissioner. *See Hays v. Sullivan,* 907 F.2$^d$ 1453, 1456 (4th Cir., 1990). In making that determination, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers,* 131 F.3$^d$ 438, 439-40 (4th Cir., 1997).

10

Therefore, it is the ALJ's responsibility to weigh the evidence, including the medical evidence, and to resolve any evidentiary conflicts. *See Hays v Sullivan*, 907 F.2d at 1456. Although he may not reject medical evidence for no reason or for the wrong reason, an ALJ may assign little or even no weight to a medical opinion, even the medical opinion of a treating source, as long as he sufficiently explains his rationale on the basis of the record. *See King v. Califano,*, 615 F.2$^d$ 1018, 1020 (4th Cir., 1980); 20 C.F.R. § 404.1527(d) and § 416.927(d).

In this case, the ALJ found that the opinions of Dr. Tyler and Dr. Cianciolo concerning the plaintiff's ability to engage in work-related activities on a regular basis were not consistent with the record. As examples of these inconsistencies, he noted the scope of the plaintiff's reported daily activities, the generally moderate nature of her mental health impairments, her intact memory and thought processes, her work activity two years after she said she that she became disabled, the inconsistency of Dr. Tyler's GAF score *vis a vis* the GAF scores of other mental health professionals, including Dr. Cianciolo, [12] and the conclusions reached by the state agency mental health consultants. (R.19,21-22.) In addition. He noted that Dr. Tyler's opinion concerning the nature and severity of the plaintiff's mental health impairments was not well-supported and not internally consistent with the other relevant evidence in the record. (R.22.) *See* SSR 96-2p.

Thus, the ALJ did not err either in affording only little weight to the treating psychiatrist's opinion and in affording only appropriate, but not controlling weight, to the examining psychologist.

---

[12] Dr. Cianciolo's GAF score of 60 (at the high end of moderate limitation) is significantly above Dr. Tyler's GAF score of 50.

11

**B.**

The plaintiff also argues that the ALJ erred in finding that her testimony concerning her subjective complaints was not entirely credible. She acknowledges in her brief, that her statements about her level of pain and other subjective symptoms alone are not conclusive evidence of disability under the Act; however, she contends that the medical signs, clinical findings and other objective medical evidence are consistent both with her stated level of pain and mental health-related limitations and that the ALJ erred in determining otherwise.

Under the agency's regulations, the determination of whether a person is disabled due to pain or other subjective symptoms is a two-part process. *Craig v. Chater*, 76 F.3$^d$ 585, 594 (4th Cir., 1996). First, there must be objective medical evidence showing the existence of a medical or mental impairment which could reasonably be expected to produce the actual pain or other subjective symptoms, in the amount and degree, alleged by the individual. *Id.*; *see also Mickles v. Shalala,* 29 F.3$^d$ 918, 922 (4th Cir. 1994). Second, if the plaintiff meets this threshold evidentiary obligation, then the ALJ must evaluate the intensity, persistence and limiting effects of those symptoms on the individual's ability to perform basic work activities. *Id.* at 595; *see also* 20 C.F.R. § 404.1529(c)(3) and § 416.929(c)(3).

In making this credibility evaluation, the ALJ must consider the entire case record and provide specific reasons for his credibility finding, in order to ensure that the weight given and the underlying reasoning is evident both to the individual and to any subsequent reviewer. SSR 96-7p.

12

This means that the ALJ's assessment of the plaintiff's credibility in the case now before the court must include a review of the entire record and consideration of any conflicts between her statements and the rest of the evidence, and he must also consider *inter alia* the effect of the plaintiff's symptoms on her daily activities; the location, duration, frequency and intensity of her symptoms; any factors that precipitate or aggravate these symptoms; the type, dosage, effectiveness and side effects of any medication regime; and any other factors shown by the evidence which impact her functional limitations. *See* 20 C.F.R. § 404.1529(c)(3) and § 416.929(c)(3); SSR 96-7p.

After reviewing the ALJ's decision, it appears that the ALJ made the necessary findings in support of his credibility determination pursuant to this framework. He reviewed the entire record. (R.19-20.) He found that the plaintiff's multi-level lumbar disc disease and her diagnosed mental disorders could be reasonably expected to produce low back pain, an attendant radiculopathy, and her subjective mental health symptoms. (R.18-20.) And by comparative analysis he assessed the credibility of her statements concerning her subjective symptoms and limitations by reference to the absence of any nerve root or spinal cord compromise (R.19), the routine nature of the treatment for her back pain and the absence of any ongoing treatment for this condition (R.21), the absence of any significant limitation of motion (R.21), the scope of her daily activities, including baby-sitting her daughter's children (R.19,21), the mild limitations in her social functioning (R.19,21), her work activities until she quit of her own volition (R.19,21), the absence of any psychiatric hospitalization (R.21), the logical and linear nature of her thought processes (R.21), her intact judgement (R.21), her admitted ability to maintain attention and concentration for one hour (R.21), the mental status

13

findings of Dr. Cianciolo and the "moderate" nature of the functional impairments he noted (R.21), and the findings of the state agency medical and psychological consultants. (R.22.)

In addition, the ALJ specifically acknowledged the plaintiff's symptoms associated with her mental condition, and he found that she had resulting moderate limitations which would limit her to simple, routine, light work in a low stress environment. (R.22.) Thus, contrary to the plaintiff's argument, the ALJ's credibility analysis was adequately detailed and was not diminished by evidence in the record which supports her statements concerning the severity of her symptoms.

In addressing the plaintiff's second contention on appeal, it must be noted once again that the task of weighing conflicting evidence and resolving evidentiary inconsistencies is within the sole province of the ALJ. *Hays v. Sullivan*, 907 F.2d 1 at 1456. In this case, the ALJ considered the entire record; he considered the plaintiff's statements as required by law; he concluded that her statements were not entirely credible; his decision sets forth specific reasons for that conclusion; and it is supported by substantial evidence. Thus, the plaintiff's second argument on this second issue is also without merit.

## V.     Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision considered adequately all of the evidence in this case;

2. The Commissioner's final decision is supported by substantial evidence;

3. The ALJ properly weighed the medical evidence, including the assessments of Dr. Tyler and Dr. Ciancilo;

4. The ALJ acted within his decisional authority to give less than controlling weight to the examining psychologist opinion of Dr. Cianciolo;

5. The ALJ acted within his decisional authority to discount the treating physician opinion of Dr. Tyler;

6. The ALJ properly assessed the plaintiff's residual functional capacity, and he properly concluded that she retained the functional capacity to perform certain of her past relevant work;

7. The ALJ properly assessed the plaintiff's credibility;

8. The ALJ properly assessed the plaintiff's residual functional capacity;

9. The plaintiff has not met her burden of proving disability; and

10. The final decision of the Commissioner should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, DENYING plaintiff's motion for summary judgment, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

VII. Notice to the Parties

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within ten (10) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.** Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 13th day of November 2008.

s/ *James G. Welsh*
United States Magistrate Judge